EXHIBIT "1" TO DECLARATION OF MARGIE MEDALLE

# EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT ("Agreement"), dated as of the closing date of the Vialog acquisition by and between **Genesys Conferencing, Inc**, a Delaware corporation (hereinafter referred to as the "Company"), and **Margie Medalle** (hereinafter referred to as the "Employee").

## WITNESSETH:

WHEREAS, the Employee is presently the **President and Chief Operating Officer** of Genesys Conferencing Services, Inc;

WHEREAS, the Company has offered employment to Employee to become effective as of the date hereof and Employee has accepted said employment; and

WHEREAS, the parties hereto desire to set forth in this Agreement the terms and conditions of the Employee's employment by the Company.

NOW, THEREFORE, in consideration of the terms and conditions hereinafter set forth, the parties hereto agree as follows:

1. Employment: Position: Responsibilities.

    1.1(a) The Company hereby employs and engages the Employee to serve as the **President and Chief Operating Officer** of the Company (or such other position commensurate with Employee's experience as the Company determines from time to time) and to perform the duties and responsibilities customarily associated with any such position and such other duties and responsibilities as the Company shall from

S:\HR\Confidential Documents\MM .doc 1/3/01 1:22:15 PM

1

time to time determine. Employee shall faithfully observe, comply with and carry out the policies and directives promulgated from time to time by the Company and shall perform Employee's duties and responsibilities to the level of satisfaction required by the Company. The person to whom Employee reports may be changed from time to time at the discretion of the Company. The acquisition of the company Vialog reflects the new reporting structure of the Employee reporting to the Chief Executive Officer of the North America Region.

1.1(b) The company hereby engages the Employee to serve as a member of the Genesys Conferencing, Inc.- SA Group Management Committee.

1. 1(c) The Employee's responsible areas of control are Finance, Call Center, Operations and Human Resources.

1.1(d) The Company hereby agrees that the Employee's principal residence of business is Hawaii. The Employee agrees to travel to all locations as necessary.

1.2 The Employee hereby accepts said employment with the Company on the terms and conditions herein set forth and agrees to devote Employee's fill time, energy and skill during regular business hours exclusively to such employment.

1.3 (a) Employee agrees that all Inventions (as herein defined) shall be and remain the property of the Company. "inventions" shall mean all ideas, prospect and customer lists, inventions, research, plans for products or services, potential marketing and sales relationships, business development strategies, marketing plans, computer software (including, without limitation, source code), computer programs, original works of authorship, copyrightable expression, characters, know-how, trade

2

secrets, information, data, developments, discoveries, improvements, modifications, technology, algorithms and designs, whether or not subject to patent or copyright protection, made, conceived, expressed, developed, or actually or constructively reduced to practice by Employee solely or jointly with others in connection with Employee's employment under this Agreement.

(b) Employee acknowledges that all Inventions shall be considered as work made for hire" belonging to the Company. To the extent that any such Inventions, under applicable law, may not be considered work made for hire by Employee for the Company, Employee agrees to assign and, upon its creation, automatically assigns to the Company the ownership of such Inventions, including any copyright or other intellectual property rights in such materials, without the necessity of any further consideration. The Company shall have the exclusive right to use the Inventions, whether original or derivative, for all purposes. At the Company's expense, Employee will assist the Company in every proper way to protect the Inventions throughout the world, including, without limitation, executing in favor of the Company or any affiliate of the Company patent, copyright and other applications and assignments relating to the Inventions.

2. <u>Term of Employment</u>.

2.1 The term of employment hereunder shall commence as of the date hereof and shall continue for a period of **thirty six months** thereafter (the "Term"), except that Employee's employment shall terminate sooner upon the occurrence of any of the following events:

(a) The death of the Employee;

3

(b) The incapacity of the Employee as defined below;

(c) An act or omission to act on the part of the Employee which would constitute cause, as defined below, for the termination of employment, and the giving of written notice to the Employee by the Company that the Company elects to terminate the employment of the Employee; or

(d) The Employee voluntarily leaves the employ of the Company.

(e) The new working environment of the acquired company, Vialog becomes non-palatable to Employee. (reference 3.7)

2.2 The term "incapacity" as that term is used in Section 2.1 (b) above refer to and include an Employee who is disabled or incapacitated with our without reasonable accommodation in accordance with any disability plan of the Company or applicable laws and the Company, at its option, elects to treat such illness, disability or incapacity as permanent in nature.

2.3 The term "cause" as that term is used in Section 2.1(c) above shall be deemed to be defined as:

(a) Persistent absenteeism or a failure to carry out the Company policies or directives, or to perform Employee's duties as required hereunder;

(b) A default or breach of any of the obligations, covenants or agreements made by the Employee herein;

(c) The commission by Employee of a felony; or

(d) The misappropriation by the Employee of Company assets or the taking of any action, whether on-duty or off duty, which materially harms or has the potential to materially harm the Company or its reputation.

4

3. Compensation: Related Matters.

3.1 Employee shall receive for Employee's services hereunder a base salary at the rate of $ 250,000 per annum payable in accordance with the Company's normal payroll procedures. Employee shall also be entitled to (i) additional increases in base salary as may be determined from time to time by the Board of Directors or any compensation committee appointed by the Board of Directors and (ii) the bonuses set forth on Exhibit A hereto subject to satisfaction of the conditions for the payment of such bonuses set forth on such Exhibit.

3.2(a) Employee has been granted options to purchase 40,000 shares of Common Stock of Genesys pursuant to the Original Stock Option Plan (the "Plan") agreement of Genesys. Such options are expected to vest in accordance with the vesting schedule contained on Exhibit B attached hereto, and shall be exercisable at the fair market value of the common stock on the date of grant. **The Employee shall be granted options to purchase 10,000 shares on the date of the acquisition of Vialog.** Employee shall be granted options to purchase an additional **10,000 shares** of Common Stock of Genesys at the end of years, **2000, 2001, 2002** if EBITDA target is achieved.

3.2(b) Upon the occurrence of any of the following events, all unvested options will vest and become immediately exercisable:

- Merger into or consolidation with another company.
- The sale of substantially all of the Company assets to another company (Asset purchase).

5

- Sale of more than 50% of the Company outstanding capital stock(controlling interest).

3.3 The Company shall reimburse the Employee for all reasonable expenses incurred by Employee in connection with the business of the Company, provided Employee shall submit proper supporting documentation for such expenses in accordance with the Company's requirements and procedures for such reimbursement.

3.4 Employee shall be eligible, to the extent Employee qualifies, for participation in any health or other group insurance plan of the Company and shall also be entitled to participate in any employee benefit programs of the Company for its employees.

3.5 Employee shall be entitled to paid vacation in accordance with company policy year during the Term, to be taken at such times as are consistent with the needs of the Company and the convenience of the Employee.

3.6 In the event the Employee's employment by the Company is terminated for "cause" pursuant to Section 2.1(c) hereof, or by virtue of Section 2.1(d) hereof because the Employee voluntarily leaves the employ of the Company, the Employee shall be entitled to (i) base salary provided for by Section 3.1 only up until the date of termination of his employment and (ii) any earned but accrued bonus, but shall not be entitled to any further compensation pursuant to Section 3.1 for the year in which the Employee's employment is terminated or any subsequent year.

3.7 In the event the Employee's employment terminates pursuant to Section 2.1(e) [The new working environment of the acquired company, Vialog becomes

6

non-palatable to Employee.], the terms of the contract shall be honored and fully in force by the parent company of which the Employee shall be entitled to (i) base salary provided for by Section 3.1 for the remaining of the term of the contract as a Consultant for the parent Company,

Genesys Conferencing, Inc. – SA and (ii) any earned but accrued bonus, but shall not be entitle to any further compensation pursuant to Section 3.1 for the year in which the Employees's employment is terminated or any subsequent year and (iii) full benefits in force for the remaining of the term of contract as a Consultant for the parent company, Genesys Conferencing, Inc. - SA.

4. Restrictive Covenants.

4.1 Employee acknowledges that the Company is in the teleconferencing services business with customers and facility sites throughout the United States and that the Employee will be familiar in detail with the activities of the Company and will participate in formulating such activities; that Employee will continue to be familiar in detail with the activities and future plans of the Company as they continue to develop during Employee's employment; and that Employee's position will give Employee a thorough knowledge of the Company's customers, suppliers and servicing and marketing operations and will place Employee in close and continuous contact with the Company's customers and suppliers. Employee further acknowledges that if Employee were to breach the restrictive covenants hereinafter set forth, Employee could do great harm to the Company and would materially diminish or destroy the value to the Company of its customer and other relationships.

7

Accordingly, during the Term of Employee's employment with the Company and one (1) year immediately after the Employee's termination with the Company (hereinafter referred to as the "Covenant Period, Employee shall not, directly or indirectly, other than on behalf of the Company, solicit or accept any teleconferencing business from any of the Company's customers (or former customers who have been customers within the two years prior to the expiration of the Covenant Period), including actively sought prospective customers with whom the Company have had contact during Employee's employment with the Company.

4.2 Employee shall not, during the Covenant Period or thereafter, other than in the course of Employee's employment by the Company, disclose to any business entity any confidential information regarding the customers, suppliers, trade secrets, marketing arrangements, financial information or methods of operation of the Company, or any other confidential information of the Company, except that nothing contained in this sentence shall be construed to prevent Employee from using any general technical know how and information that is in the public domain or of a nature known generally throughout the industry.

4.3 Unless otherwise consented to by the Company Employee shall not, during the Covenant Period, hire or solicit for hiring, on own behalf or on behalf of any business entity, any employee of the Company.

4.4 Employee shall not, during Employee's Term of employment or upon termination thereof, remove from the offices of the Company, any studies, samples, reports, plans, contracts, publications, customer lists or other similar items nor copies or

8

facsimiles thereof, except as the same may relate to the performance of Employee's duties hereunder, or as otherwise authorized by the Company. Upon termination of employment, Employee shall return to the Company any such materials in Employee's possession or control and any other property of the Company.

5. Restrictive Covenants Severable.

The provisions of Section 4 of this Agreement contain a number of separate covenant, all of which are included respectively in said Section for the purpose of brevity only, and each of which shall be construed as a separate covenant and shall be separately enforceable, and if any court of competent jurisdiction shall determine that any pan of said Section, or any part of any sentence or paragraph thereof, or any such separate covenant therein contained, is unduly restrictive or void, the remaining part or pans, or the other separate covenants, shall be considered valid and enforceable, notwithstanding the voidance of such pan or separate covenant.

6. Remedies.

Employee acknowledges that it will be impossible to measure in money the damage to the Company of a breach of any of the provisions of Section 4; that any such breach will cause irreparable injury to the Company and that the Company, in addition to any other rights and remedies existing at law or equity or by statute, shall be entitled to an injunction or restraining order restraining Employee from doing or continuing to do any such acts and any other violations or threatened violations of Section 4, and Employee hereby consents to the issuance of any such injunction or restraining order without bond or security.

7   Notices.

All notices required or permitted to be given by any party hereunder shall and delivered in person or mailed by express or registered or certified mail, requested, to the other parties addressed as follows:

(a)   If to the Employee to 619 Milokai Street, Kailua, HI, 96734 be in writing return receipt;

(b)   If to the Company to Francois Legros, Genesys, S.A., Le Regent 4 rue Jules Ferry, BP 1145, 34008 Montpellier Cedex 1, France and a copy to the Group Vice-President, Human Resources, Genesys SA; or to such other addresses as the parties may direct by notice given pursuant hereto. Any notice mailed as provided above shall be deemed completed on the date of receipt.

8.   Entire Agreement.

The provisions hereof constitute the entire agreement among the parties with respect to the subject matter hereof and supersede, replace and terminate all existing oral or written agreements concerning such subject matter. No modification, supplement or discharge hereof shall be effective unless in writing and executed by or on behalf of the parties hereto.

9.   Waiver.

No waiver by any party of any condition, term or provision of this shall be deemed to be a waiver of a preceding or succeeding breach of the other condition, term or provision hereof.

10.   Assignability

This Agreement, and its rights and obligations may not be assigned by The Company may assign its rights and obligations hereunder to any of its or affiliates, or to any successor in interest to its business.

11. Arbitration.

The parties agree to submit any controversy or dispute arising out of or this Agreement, including matters relating to Employee's employment with the to final, binding arbitration in the City and County of Honolulu, Hawaii. Such shall be conducted under the administration and pursuant to the rules of Dispute Prevention and Resolution, Inc. before an arbitrator or arbitrators selected in accordance with those rules. The decision of the arbitrator(s) shall be final and binding on the parties. The arbitrator(s) shall have the discretion to order that the costs of arbitration, including the arbitrator's fees, other costs, and reasonable attorney's fees of the prevailing party, shall be borne by the non-prevailing party.

12. Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

GENESYS CONFERENCING, INC.

By: _____
Name: François Legros
Title: Chairman of the Board

_____ 8/30/2001
Margie Medalle

11

## EXHIBIT A BONUS

1. **Bonus Plan** : An amount equal to **50% of base compensation**. Payment will be based on achievement of target for the North America business. There will be decelerators and accelerators based on achievement. Bonus will be paid out on a quarterly basis.

   1 (a) **Bonus Plan Guarantee**: Existing plan will remain the same for the first year of acquisition with a bonus guarantee. A bonus guarantee of $125,00 annually will be paid, if achievement is below. If achievement is above, the higher payout based on the existing plan will be paid.

   Francois Legros: _[signature]_
   Date: _[signature] 2/30/2001_

# EXHIBIT B: OPTION VESTING SCHEDULE

After One Year: 20%
After Three Years: 50%
After Four Years: 30%

Francois Legros: _[signature]_
Date:

_[signature]_ 4/30/200