EXHIBIT "4" TO DECLARATION OF MARGIE MEDALLE

## GENESYS CONFERENCING, INC.

## SEPARATION AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT, made by and between GENESYS CONFERENCING, INC. (the "Company" or "Genesys") and MARGIE MEDALLE ("Ms. Medalle"), witnesses that:

WHEREAS, Ms. Medalle has been employed by the Company as Chief Executive Officer, North America; and

WHEREAS, the Company is reorganizing its operations;

WHEREAS, as a result of the reorganization the position of Chief Executive Officer, North America will be eliminated effective December 31, 2003; and

WHEREAS, Ms. Medalle was offered, but declined, another position with the Company; and

WHEREAS, the parties wish to memorialize the terms of Ms. Medalle's separation from employment;

NOW, THEREFORE, in consideration of the terms and conditions of this Agreement, the Company and Ms. Medalle agree as follows:

1. **Elimination of Position**. Ms. Medalle acknowledges that her position as Chief Executive Officer, North America is being eliminated on December 31, 2003, and that the Employment Agreement she executed with the Company on January 30, 2001 is terminating on the same date. Ms. Medalle agrees her last day of active employment will be December 31, 2003 (the "Separation Date"). Except as provided elsewhere in this Agreement, Ms. Medalle's employment benefits will cease in accordance with the terms of the specific benefit plans at issue on the Separation Date. Notice of Ms. Medalle's rights, if any, with respect to individual continuation of plan benefits, other than health benefits, will be provided under separate cover.

Ms. Medalle will be a consultant for a six-month period commencing January 1, 2004, and the details of this consulting arrangement will be memorialized in a separate agreement. For

{H:\PA\LABOR\1139970704\1\A0674063.DOC}

purposes of this Agreement, the "Consulting Period" is defined as the six-month period commencing January 1, 2004 through June 30, 2004.

2. **Severance Compensation**. In consideration of the waiver and release as set forth in Section 14 below, the Company will compensate Ms. Medalle in an amount equal to eighteen-months of pay at Ms. Medalle's base rate of pay in effect as of the Separation Date, less all lawful withholdings and deductions (the "Severance Compensation"). Ms. Medalle will receive the Severance Compensation in two lump sum payments: one representing one half of the total due in January 2004, and one representing one half of the total due in July 2004.

(a) Fifty percent (50%) of the Severance Compensation will be designated as compensation in connection with Ms. Medalle's separation from employment.

(b) Fifty percent (50%) of the Severance Compensation will be designated as consideration for the waiver and release as set forth in Section 14 below.

(c) Ms. Medalle acknowledges that this payment satisfies the Company's severance obligation in her Employment Agreement with Genesys.

(d) Ms. Medalle further acknowledges that under her Employment Agreement she is entitled only to payment equal to twelve (12) months of pay at her then current base rate of compensation, less all lawful withholdings and deductions, and thus the amount of Severance Compensation above is greater that that to which she is otherwise entitled and she is receiving such extra consideration as a result of this Agreement.

For purposes of this Agreement, the "Severance Period" is defined as the eighteen (18)-month period commencing January 1, 2004 through June 30, 2005.

3. **Health Insurance Benefit Continuation**. Subject to the Company's Insurance Plan, the Company will pay the entire premium for Ms. Medalle's health and dental insurance coverage for six (6) months following the Separation Date. At the expiration of the six (6) month period, Ms. Medalle may elect to continue health and dental insurance coverage (COBRA coverage) under the Company's Plan for up to eighteen (18) months. The Company will pay the entire premium cost under COBRA during this eighteen (18) month period including any

{H:\P A\LABOR\13997\0704 1\A0674063.DOC}

2

applicable administrative fees, subject to the Insurance Plan. Ms. Medalle acknowledges that the Company's payment of such premiums is compensation to which she would not otherwise be entitled, except under the terms of this Agreement.

If Ms. Medalle becomes eligible for comparable health insurance coverage from another employer any time during the two (2) year period described above, the Company's obligation under this Section will cease.

Effective January 1, 2006, if still eligible for COBRA, Ms. Medalle will be solely responsible for paying the COBRA premium costs in their entirety thereafter, including any administrative fees, as allowed by law.

4. **Vacation**. The Company will compensate Ms. Medalle for all accrued but unused vacation time, less all lawful withholdings and deductions, as of the Separation Date.

5. **Other Benefits**. Ms. Medalle will earn no vacation leave nor will she be eligible for or accrue any other benefits not specifically provided in this Agreement, after the Separation Date.

6. **Stock Options**.

    (a) Ms. Medalle shall retain all unexercised Stock Options granted to her by Genesys at the applicable published exercise price and under the existing vesting schedules. A more detailed accounting of these Options will be provided under separate cover.

    (b) The Company will provide Ms. Medalle with 115,000 new Stock Options as of August 8, 2003, in consideration for her waiver of rights under Amendment A, dated September 5, 2002, to her January 30, 2001 Employment Agreement, thereby rendering null and void all terms and conditions of Amendment A.

7. **Bonus**. The Company acknowledges Ms. Medalle may be eligible for any outstanding Bonus through December 31, 2003, in an amount determined and paid out under the terms and conditions governing her participation in the 2003 Genesys Management Incentive Compensation Plan.

8. <u>Indemnification</u>.  The Company agrees to indemnify and hold harmless Ms. Medalle from and against any and all claims, actions, suits, proceedings, losses, damages, liabilities, costs, fees or expenses (including reasonable attorneys' fees) ("claims"), arising from or in connection with her employment as Chief Executive Officer, North America, provided that such claims do not arise from the gross negligence, misconduct, recklessness, willful or intentional misrepresentation, fraud or violation of law, including but not limited to the Sarbanes-Oxley Act of 2002, by Ms. Medalle.

9. <u>Company Property</u>.  Ms. Medalle agrees that she will return to the Company, at the end of the Consulting Period, all property of the Company.  For purposes of this section, "property of the Company" includes, but is not limited to: automobile, keys, Company credit cards, security cards, cell phones, pagers, computers, computer programs, computer apparatus, equipment, books, supplies, originals and copies of all Company documents, including financial records and information, and any other materials pertaining to the Company, whether prepared by Ms. Medalle or by others, but excludes anything owned by Ms. Medalle individually.

10. <u>Confidentiality</u>.  To the extent permitted by law, Ms. Medalle understands and agrees that as a condition for payment to her of the consideration herein described, the terms and contents of this Separation Agreement and the contents of the negotiations and discussions resulting in this Separation Agreement, shall be maintained as confidential by her, her immediate family members, agents, legal advisors and representatives and none of the above shall be disclosed except to the extent required by federal or state law or as otherwise agreed to in writing by the Company.

11. <u>Confidential and Proprietary Information and Restrictive Covenants</u>.  Ms. Medalle acknowledges her on-going responsibilities under the terms of the Employment Agreement she executed with the Company, on January 30, 2001, concerning confidential and proprietary information and restrictive covenants, and which continue in full force and effect after the Separation Date.

12. <u>Protection of Good Name/Non-Interference</u>.  Ms. Medalle agrees that she will not in any way disparage or harm the name of the Company, its past and present directors, officers, employees, agents and attorneys, in either their personal or official capacities.  The Company

{H:\PA\LABOR\13997\0270-1\A0674063.DOC}

4

agrees that it will not in any way disparage or harm Ms. Medalle's name. The parties understand that doing so will constitute a material breach of the Agreement.

Ms. Medalle further agrees not to interfere with Company operations or employees in any manner, and that she will not be present on Company property after the expiration of the Consulting Period, without permission from the Vice President of Human Resources. Ms. Medalle understands that doing so will constitute a material breach of the Agreement.

13. **Acknowledgment**. Ms. Medalle acknowledges that any violation of the provisions set forth in Sections 9, 10, 11 or 12 above will constitute a material breach of this Agreement, and that, upon such breach, the obligations of the Company, as set forth in Sections 2, 3, and 8 above, will cease immediately.

14. **Waiver and Release**. In consideration of the payments and benefits as set forth in Sections 2, 3, and 8 of this Agreement, Ms. Medalle hereby releases and forever discharges the Company and its Affiliates, and all of Company's and its Affiliates' past and present directors, officers, employees, agents and attorneys, whether directly or indirectly, and whether individually or in their official capacities (collectively, the "Releasees"), from any and all debts, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, whether directly or indirectly, personally or derivatively through others, whether known or unknown to, or whether suspected or unsuspected by her (collectively, "claims"), both in law and in equity, which Ms. Medalle has, or ever had, or ever may have, against the Releasees, through the date of execution of this Agreement.

This release of claims includes, but is not limited to, all claims of prohibited discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; the Americans With Disabilities Act of 1990, 42 U.S.C. §12101 et seq.; Chapter 151B of the Massachusetts General Laws; the Massachusetts Civil Rights Act (M.G.L. c. 12, §§11H-11I); and, all claims arising out of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.; the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq.; the Massachusetts Equal Rights Act (M.G.L. c. 93, §102 and M.G.L. c. 214, §1C); the

Massachusetts Labor and Industries Act (M.G.L. c. 149, §1 et seq.); and the Massachusetts Privacy Act (M.G.L. c. 214, §1B), all as amended; which Ms. Medalle has, or ever had, or ever may have, against the Releasees as of the date of execution of the Agreement, and more particularly all claims arising out of, or otherwise related to, Ms. Medalle's employment, or separation from employment, with Genesys.

This release of claims also includes, but is not limited to, all common law claims including, but not limited to, intentional or negligent infliction of emotional distress, loss of consortium, punitive damages, wrongful discharge, and all claims for severance pay, interest, attorney's fees, costs, and reinstatement to employment with Genesys, or any other claim arising out of, or otherwise related to, Ms. Medalle's employment, or separation from employment, with Genesys.

In further consideration of the payments and benefits set forth in Sections 2, 3, and 8 above, Ms. Medalle waives the right to assert or file any claim, cause of action, complaint or other action against the Releasees in any forum arising out of, or otherwise related to, her employment, or separation from employment, with the Company.

Ms. Medalle acknowledges that she may later discover facts different from, or in addition to, what she now knows to be true for matters released in this Agreement; notwithstanding any such different or additional facts, Ms. Medalle agrees that this Agreement will remain in effect as to all claims released hereunder.

For purposes of the Agreement, the term "Affiliate" will mean an entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, Genesys.

The recitation of specific claims in the second and third paragraphs of this Section is without prejudice to the general release in the first paragraph of this Section and is not intended to limit the scope of the general release.

*This Release does not apply to any claims arising solely after the execution of this Agreement or to any claims arising from a breach of this Agreement.*

15. <u>Review, Revocation and Effective Date</u>.

(a) *Review and Revocation*. Ms. Medalle understands and agrees that she has twenty-one (21) days in which to consider this Agreement prior to signing it. Ms. Medalle understands further that, once she has signed this Agreement, she has seven (7) days in which to revoke it. Ms. Medalle understands that the Agreement does not become effective or enforceable until such seven-day revocation period has expired.

(b) *Effective Date*. The Effective Date of this Agreement will be the eighth day after Ms. Medalle signs it, pursuant to Section 15(a) above. If Ms. Medalle does not notify the Company, in writing, within the seven-day revocation period that she is exercising her right of revocation, the Agreement will automatically become effective as of the Effective Date.

16. <u>Right to Consult Attorney</u>. Ms. Medalle acknowledges that by this Agreement she has been advised, in writing, to consult legal counsel regarding this Agreement prior to signing the Agreement. To the extent that Ms. Medalle has wished to do so, she has availed herself of the right to consult legal counsel.

17. <u>No Admission of Liability</u>. Nothing contained herein shall constitute any statement or admission by the Company or its agents of any liability, or that it engaged in any wrongdoing, or violated any state or federal law.

18. <u>Tax Advice</u>. Ms. Medalle acknowledges that neither the Company nor its counsel has advised her about the taxability of any monies paid to her under this Agreement, and that any tax advice she chooses to seek concerning such monies will be her responsibility, and obtained from a source independent of the Company.

19. <u>Completeness of Agreement</u>. This Agreement contains all the terms and conditions agreed upon by the parties with reference to the subject matters contained in the Agreement. No other agreement, except for paragraphs 4, 5, and 6 of her January 30, 2001 Employment Agreement with Genesys, the relevant provisions of 2003 Genesys Management Incentive Compensation Plan, the relevant provisions of the Genesys SA Stock Option Plan, and the

---

[1] Ms. Medalle is hereby reminded of her continuing obligations under paragraphs 4, 5 and 6 of her employment agreement with Genesys including the one (1) year non-competition and non-solicitation provisions.

{H:\PA\LABOR\13997\07041\A0574063.DOC}

7

Consulting Agreement effective as of January 1, 2004, will be deemed to exist or to bind either of the parties to this Agreement. No representative of any party to this Agreement had or has any authority to make any representation or promise not contained in this Agreement, and each of the parties to this Agreement acknowledge that such party has not executed this Agreement in reliance upon any such representation or promise. This Agreement cannot be modified except by a written instrument signed by both parties.

20. **Severability**. If any portion or provision of this Agreement is held unconstitutional, invalid, or unenforceable, the remainder of the Agreement will be deemed severable, will not be affected, and will remain in full force and effect. The language of all the parts of this Agreement and Release shall be construed as a whole, according to its fair meaning, and not strictly for or against either party.

21. **Voluntary Execution**. Ms. Medalie acknowledges that she has read this Agreement and understands it, and that she is entering into it voluntarily.

22. **Interpretation of Agreement**. This Agreement will be interpreted and construed for all purposes under the laws of the Commonwealth of Massachusetts. All disputes arising under or out of this Agreement will be brought in courts of competent jurisdiction located within the Commonwealth of Massachusetts.

EXECUTED as a sealed instrument.

_____   Dated: 12/23/03
MARGIE MEDALIE

Witness: _____   Dated: 12/22/03

GENESYS CONFERENCING, INC.

By: _____   Dated: 12/31/03
FRANCOIS LEGROS,
CHAIRMAN AND CEO

{H:\PA\LABOR\13997\07041\A0674063.DOC}

8

STATE OF HAWAII

County of Honolulu, ss                                    12-23          , 2003

Then personally appeared the above-named MAGGIE MEDALLE and acknowledged the foregoing instrument to be her free act and deed, before me.

_____
Notary Public
My Commission Expires: 5-15-2005