EXHIBIT "6" TO DECLARATION OF MARGIE MEDALLE

# Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

Samuel E. Feigin
Member

Direct dial: (617) 348-1736
sfeigin@mintz.com

617 542 6000
617 542 2241 fax

August 25, 2004

**Via Facsimile and Overnight**     **Personal and Confidential**

Ms. Margie Medalle
619 Milokai Stret
Kailua, HI 96734

Re: Breach of Post-Employment Obligations to Genesys Conferencing, Inc.

Dear Ms. Medalle:

I am writing on behalf of Genesys Conferencing, Inc. ("Genesys" or the "Company") in connection with your recent breach of post-employment obligations to Genesys. As you know, you executed an Employment Agreement containing post-employment restrictive covenants on or about January 30, 2001. You reaffirmed your legal obligation to comply with such restrictive covenants through the Separation Agreement and General Release that you executed on or about December 23, 2003. In accordance with the agreements, you are required to (1) refrain from soliciting or accepting business from Genesys customers and prospective customers for a one (1) year period, (2) refrain from disclosing to any business entity (including any that you own or operate) any confidential information regarding Genesys or its customers, (3) refrain from hiring or soliciting any Genesys employee for a one (1) year period, (4) return any Genesys materials in your possession or control, (5) refrain from disparaging Genesys or any of its past or present directors, officers, employees, agents and attorneys and (6) refrain from "interfer[ing] with Company operations or employees in any manner...."

We have reliable information that you have formed a competing entity known as World Class Conferencing and hired several Genesys employees. In short, if you do not immediately (1) cease and desist from violating the covenants contained in the agreement, (2) terminate your company's relationship with all Genesys employees other than you and (3) provide the written assurances enumerated below, Genesys will take any and all legal actions necessary to safeguard its interests and preclude you and any person or entity facilitating or benefitting from your unlawful activities from engaging in or profiting from any unlawful conduct. Those actions will include the filing of a civil action against you and World Class Conferencing seeking an injunction, attorney's fees and a variety of monetary damages.

During your employment as the head of the Company's North American operations, you routinely used extremely sensitive, confidential information. Those you have engaged, including Dan Tokuoka and Earnest Fulton, also used such information. In addition, you and the others you have engaged developed relationships with the Company's customers, suppliers, consultants, advisors and employees—all at the Company's behest and expense. Apart from other likely

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

Ms. Margie Medalle
August 25, 2004
Page 2

misconduct, it is readily apparent that you hired Mr. Tokuoka and Mr. Fulton in violation of your contractual obligations to Genesys. As you are well aware, Genesys has and continues to invest substantial amounts of time, money and effort to cultivate its employees, customers and products, and to safeguard the associated goodwill and confidentiality. Beyond your contractual obligations to Genesys, common law prohibits you from using any confidential or proprietary information that you acquired through your employment with the Company in connection with other activities. Moreover, by virtue of your senior position, you owe Genesys a higher level of fiduciary duty than other current and former employees. The courts have not hesitated to enjoin such misconduct, disgorge profits arising therefrom and award monetary damages for injuries caused by such misconduct.

Ms. Medalle, to avoid further action by Genesys, it is imperative that by no later than the close of business on August 27, 2004, you provide me with a written, signed statement certifying that:

1. You have not used or disclosed any Genesys confidential information since leaving Genesys; provided, if you have done so, whether inadvertently or otherwise, you must immediately identify the specific information and/or documents used or disclosed and the names of any individual and entity to whom such disclosure was made; *(NONE)*

2. You have returned all Genesys materials including hard and soft copies of any documents; *(YES)*

3. You will refrain from soliciting or accepting business from any Genesys customer or prospective customer with which you had contact while with Genesys until one (1) year from today;

4. You will refrain from soliciting or hiring any Genesys employee until one (1) year from today;

5. You have terminated your company's relationship with all Genesys employees other than yourself; and

6. You will not engage in any conduct from this point forward that would constitute a further breach of your obligations to Genesys.

If you do not provide the aforementioned written statement by August 31, 2004, you and any other person or entity who has facilitated your misconduct will be at immediate risk of substantial, time consuming, public and expensive legal action.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Ms. Margie Medalle
August 25, 2004
Page 3

I look forward to your prompt response and hope that litigation will not be necessary.

Sincerely,

Samuel E. Feigin

# CARL M. VARADY

ATTORNEY AT LAW

American Savings Bank Tower
1001 Bishop Street
Suite 2870
Honolulu, Hawai'i 96813
Telephone 808/523-8447
Facsimile 808/523-8448

August 30, 2004

<u>Via Facsimile & Mail</u>
Samuel E. Feigin, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

      RE:    Genesys Conferencing, Inc. allegations against Margie Medalle

Dear Mr. Feigin:

      I represent Ms. Margie Medalle and am writing in response to your letter of August 25, 2004. Your client's allegations that Ms. Medalle has breached her agreements with Genesys Conferencing, Inc. ("Genesys") are unfounded. Ms. Medalle is aware of the terms of both her employment agreement and the separation agreement with Geneysis. Ms. Medalle has fulfilled her legal obligations under those agreements, and continues to do so.

      Ms. Medalle is not soliciting or accepting teleconferencing business from Genesys customers, as defined in ¶ 4.1 of the Employment Agreement. Ms. Medalle has formed a new company and is developing the means to provide various telephone services. Ms. Medalle's company World Class Conferencing, Inc., ("World Class") has received inquiries from potential clients for services to be provided by World Class. In cases where World Class employees are aware that the prospective clients are "customers," as defined in ¶ 4.1 of the Employment Agreement, services have been declined to such "customers." This practice will continue until the trade restraint expires on December 23, 2004.

      The employment and separation agreements are internally inconsistent regarding "customer" information. As you note, the Employment Agreement prohibits Ms. Medalle from disclosing "confidential information regarding [Genesys's] customers." If Genesys wishes to assure that World Class does not accept "teleconferencing" business from any entity that could be considered a "customer," as described in ¶ 4.1, it would be necessary for your client to provide a list of entities whom Genesys asserts would fall within the description of ¶ 4.1. Without such a list, World Class employees can only ask prospective clients who seek teleconferencing services whether they are customers of Genesys and, until December 24, 2004, decline further discussions with such entities. If Genesys does not assert such customer information is confidential, please confirm this in writing and Ms. Medalle will, to the best of her abilities, provide such information to World Class employees for their use from now until December 24, 2004.

Samuel E. Feigin, Esq.
August 30, 2004
Page 2 of 2

Regarding employees of Genesys, your letter is incorrect. Neither of the gentlemen specifically mentioned was a Genesys employee when hired by World Class. Mr. Tokuoka terminated his employment with Genesys June 23, 2004, and was not hired by World Class until July 12, 2004. Mr. Fulton terminated his employment on July 22, 2004, and was hired by World Class on August 12, 2004. Neither gentlemen was solicited for employment prior to his termination of employment with Genesys. Neither could be considered "employees of the Company," as defined in ¶ 4.3 of the Employment Agreement. Also false are assertions that Ms. Medalle may not solicit or hire any Genesys employee for one year from the date of your letter. This is directly contrary to ¶ 4.3 of the Employment Agreements. As in the instance of customer solicitation, should Genesys want to assure that no current Genesys employees are solicited or hired during the term of their Genesys employment, Genesys may wish to provide Ms. Medalle with an employee roster.

Ms. Medalle does not have any Genesys materials in her possession and cannot respond to any demand that she return materials she does not possess.

Ms. Medalle has not disparaged Genesys or its past or present officers, directors agents or attorneys. If Genesys has proof of such disparagement, I request that you produce it immediately, including the identity of any witnesses to such disparagement. On a related topic, please review ¶ 12 of the separation agreement with your client. Ms. Medalle is concerned, given the tenor and accusations of your letter, that Genesys may be engaged in disparaging her. If corroborating evidence of such conduct is discovered, Ms. Medalle will pursue her remedies as forcefully as Genesys has threatened to do.

Regarding "confidential and proprietary information," the courts construe such characterizations narrowly, as they do restraints on trade generally. Ms. Medalle is not a fiduciary of Genesys, as she no longer is an officer, director or employee. Courts uniformly hold that if the alleged "confidential" information can be readily duplicated without expending considerable time, effort or expense, it is not secret. *E.g., Hamer Holding Group, Inc. v. Elmore*, 202 Ill. App. 3d 994, 560 N.E.2d 907, 918-19 (1990). There is no evidence that Ms. Medalle obtained secret information that she could not obtain through public means, or that such information now was communicated to World Class. *See, Orkin Exterminator Co. v. Weaver*, 257 Ark. 926, 930, 521 S.W.2d 69, 71 (Ark. 1975)(court refused to enforce non-competition agreement where technical manuals and pesticides could be purchased on the open market). The law does not provide any protection from such ordinary competition. *Id.*; *HCCT, Inc. v. Walters*, 99 Ohio App. 3d 472, 474, 651 N.E.2d 25 (Ohio App. 1994)(refusing to enforce non-competition clause against hair stylist because no trade secrets were being protected; court characterized enforcement as trying to prevent "ordinary" not "unfair" competition).

The threats of injunctive relief likewise are baseless. The Employment Agreement is construed under Hawai'i law and subject to adjudication here. A predicate to any injunction is the condition that the harm be irreparable and money damages not be sufficient to remedy the harm. Under Hawai'i law, irreparable harm

Samuel E. Feigin, Esq.
August 30, 2004
Page 3 of 3

occurs only where money damages are an insufficient remedy for the alleged harm. *Penn v. Transportation Hawaii Lease, Ltd.*, 2 Haw. App. 272, 276 at n.1 630 P.2d 646, 650 (Ct. App. 1981); *Klausmeyer v. Makaha V.F., Ltd.*, 41 Haw. 287 (1956). Clearly, if Genesys has been damaged here, money damages would be a sufficient remedy.

Finally, please advise your client that the lack of geographic limitations and the bar on contacting any "prospective customer" from the period of Ms. Medalle's employment probably are unenforceable in Hawai'i as a general matter. The common law policy against contracts in restraint of trade is one of the oldest and most firmly established. RESTATEMENT (SECOND) OF CONTRACTS §§ 185-188 (1981) (Introductory Note at 35); RESTATEMENT (THIRD) UNFAIR COMPETITION § 1, comment a. The basis for any non-competition agreement must be a legitimate business interest worthy of protection. *E.g., In re Golden Distributors, Inc.*, 128 B.R. 352, 364 (S.D.N.Y 1991)(refusing to enforce agreement because no secret information protected by it); *Franke v. Honeywell, Inc.*, 516 N.E.2d 1090, 1093 (Ind. App. 1987)(refusing to issue injunction because the customer and technical service information sought to be protected was readily available from other sources).

The law does not provide any protection from ordinary competition. *Orkin Exterminator Co. v. Weaver*, 257 Ark. 926, 930, 521 S.W.2d 69, 71 (Ark. 1975); *HCCT, Inc. v. Walters*, 99 Ohio App. 3d 472, 474, 651 N.E.2d 25 (Ohio App. 1994)(refusing to enforce non-competition clause against hair stylist because no trade secrets were being protected; court characterized enforcement as trying to prevent "ordinary" not "unfair" competition); *Microbial Research Corp. v. Muna*, 625 P.2d 690, 698-99 (Utah 1981). Such covenants that are *per se* illegal do not enjoy the "reasonableness" analysis that might otherwise apply if they were directed to fulfill a lawful purpose. *See, Technicolor. Inc. v. Traeger*, 57 Haw. 113, 122, 551 P.2d 163, 170 (1976)(distinguishing contracts that are unlawful *per se* from those that seek to reasonably restrain unfair competition); *accord,* RESTATEMENT (SECOND) CONTRACTS §§ 178, 181 & 185-88.

Ms. Medalle asserts she has not violated the terms of either her Employment Agreement or the Separation Agreement and General Release. Her conduct is consistent with those agreements and limitations imposed by common law. If you or Genesys have direct evidence to prove otherwise, I repeat my request that you provide it immediately.

Finally, as Ms. Medalle has informed both Mr. Legros and Mr. Jones, World Class's focus will be mainly on small and medium enterprises, not the large business entities upon which Genesys's business is focused. It is unlikely that, even after World Class begins providing conferencing services, that it would considered a competitor in the same market as Genesys. Ms. Medalle actually discussed a working relationship with Genesys, which Mr. Legros seemed interested in discussing. Apparently, Genesys has decided to take an adversarial approach to what might otherwise be a productive relationship for both Genesys and World Class. Please confer with your client and let me know if Genesys would be interested in pursuing such a relationship with Ms. Medalle and World Class.

Samuel E. Feigin, Esq.
August 30, 2004
Page 4 of 4

Very truly yours,

*[signature]*

Carl M. Varady

c: Client